1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

7

## SOUTHERN DISTRICT OF CALIFORNIA

8
9
10

**BRUCE KENDALL BENN,**

11

**Plaintiff,**

12

**vs.**

13
14

**E. DUARTE, et al.,**

15

**Defendants.**

16

Civil No.      11cv01214-AJB(JMA)

**ORDER GRANTING MOTION FOR
PARTIAL DISMISSAL**

(ECF No. 16)

17         Plaintiff Bruce Kendall Benn ("Benn"), a state prisoner proceeding *pro se* and *in forma pauperis*

18    with this 42 U.S.C. § 1983 civil rights action, alleges violations of the Fifth, Eighth, and Fourteenth

19    Amendments arising from an incident on May 19, 2009 at Calipatria State Prison, where he was then

20    confined.  Benn alleges correctional officers E. Duarte and E. Garcia used excessive force by spraying

21    oleoresin capsium ("OC") into his cell while investigating a rules infraction report that he and his cell

22    mate possessed a cellular phone.  He names as additional defendants five other prison officials who

23    participated in the subsequent administrative review process.  He sues each defendant in his individual

24    and official capacities.  Benn seeks restoration of credits and points he lost when he was found guilty

25    of the rules infraction, removal of all documents from his file related to the event, a judicial declaration

26    "that the acts and omissions described [in the Complaint] violated Plaintiff's Constitutional and State's

27    rights," a permanent injunction vaguely ordering all the defendants "to desist their transgression of

28    aiding and abet[t]ing any actions known to be a violation of the Department of Corrections governing

1  policy," and monetary damages against each defendant in amounts ranging from $75,000 to $375,000.

2  (ECF No. 1 at 19-20.)[1]

3          This matter is before the Court on Defendants' Motion To Dismiss ("Motion") pursuant to

4  Federal Rule of Civil Procedure ("Rule") 12(b)(6).   (ECF No. 16.)  They contend they are immune

5  from suit for money damages in their official capacities, and the complaint fails to state facts sufficient

6  to support a cognizable claim for relief against any of the defendants except Duarte and Garcia.  (ECF

7  No. 16-1, 3:18-21.)  They argue officers Duarte and Garcia should be required to answer the excessive

8  force claim "under the Eighth Amendment only."  (Id., 8:6-8.)  They also argue dismissal of all claims

9  against the five defendants other than Duarte and Garcia should be with prejudice because the claims

10  are frivolous and unsupported by law.[2]  (Id., 8:2-6, citing Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir.

11  2000) ("Courts are not required to grant leave to amend if a complaint lacks merit entirely").)   Benn

12  requested and was granted an extension of time to respond to the Motion.  (ECF Nos. 17, 18.)  The

13  January 23, 2012 deadline has passed, with no response from Benn before or since.

14  **I.      COMPLAINT ALLEGATIONS**

15          Benn alleges correctional officer Duarte, aided and abetted by officer Garcia, used excessive

16  force in spraying two cans of OC directed at Benn's face and torso through the bars of his secured cell

17  door when they arrived to conduct a search for a cellular phone the inmates were suspected of

18  possessing.   (ECF No. 1 at 13-15.)   No phone was recovered, but Benn was transferred to

19  Administrative Segregation and lost custody credits after a disciplinary hearing found him guilty of the

20  infraction, and his subsequent administrative grievance appeals were denied.  He describes the incident

21  in detail (id. at 14-16), allegations the Court accepts as true for purposes of deciding the Motion.  *See*

22  Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).

23          Benn recites that Officers Duarte and Garcia approached his prison cell on May 19, 2009 to

24  conduct the cell phone search.  He contends the officers' reported version of events  was "embellished

25          [1]  Page numbers for docketed materials cited herein refer to those electronically imprinted.

26
27          [2]  "Frivolousness" within the meaning of the *in forma pauperis* standard of 28 U.S.C. § 1915(d) and
    failure to state a claim under Rule 12(b)(6) are distinct concepts. "[T]he considerable common ground between
    these standards does not mean that the one invariably encompasses the other." Neitzke v. Williams, 490 U.S. 319,
28  328, 331 (1989) (holding "that a complaint filed in forma pauperis is not automatically frivolous within the
    meaning of § 1915(d) because it fails to state a claim").

1  . . . in an effort to justify their Excessive Use of Force." (ECF No. 1 at 14.) The officers reported that

2  after they handcuffed Benn's cell mate, they ordered Benn to come to the cell door to be handcuffed;

3  they reported "Plaintiff places his hand through the food port and then pulled away his hand to retrieve

4  a cell phone from his waistband and threw it inside the toilet and attempted to flush the toilet;" while

5  Benn engaged in that conduct, his cell mate was obstructing the officers' view into the cell; and Duarte

6  discharged one continuous burst of OC spray towards Benn "via the food port." (ECF No. 1 at 14-15.)

7       Benn refutes factual details of the officer's reported version of the incident. Among other things,

8  he represents his cell mate could not have been obstructing the officers' view because Benn was closest

9  to the cell door, as demonstrated by where he received the spray (EFC No. 1 at 15-16), the pipe drains

10  at Calipatria are equipped with baskets to retrieve items inmates attempt to dispose of, and no cell phone

11  was recovered in the cell, yet he and his cell mate were "removed from General population and [were]

12  transferred to Administrative Segregation (Adseg) Housing Unit [even] though there were [sic] no

13  evidence to substantiate the charge of 'Possession of a Cellular Phone' " (id. at 13). He alleges the

14  officers' conduct also violated provisions of the California Code of Regulations, Title 15, forbidding

15  guards from "non-professional" conduct against prisoners and from using "more force than is objectively

16  reasonable." (Id. at 4, 3.) He states that officer Duarte also "[i]n bad faith . . . turn[ed] on the hot water

17  instead of the cold water in the shower to decontaminate Plaintiff from the O.C. spray which was against

18  the institution's governing policy." (Id. at 16).

19       In addition to officers Duarte and Garcia, Benn names five other defendants: J. Kellerman, G.

20  J. Janda, Larry Smalls, R. Manuel, and  Matthew Cate. Those individuals were involved in the

21  administrative hearing of the rules violation and Benn's appeals of the result. He alleges each of those

22  defendants, in their official and individual capacities, acting under color of law, violated due process

23  and his right to be free from cruel and unusual punishment guaranteed by the Fifth, Eighth, and

24  Fourteenth Amendments as well as the due process clause of the California Constitution. He accuses

25  each of failing to intervene to rectify Duarte's and Garcia's alleged constitutional violations. In

26  convicting him of the rules violation and denying his grievance at each stage of review, Benn alleges

27  they acted without evidence to substantiate the charge and reached erroneous conclusions on his

28  excessive force claim. (ECF No. 1 at 17-18.)

In particular, Benn names J. Kellerman, who "in the capacity of supervisor under color of law . . . [,] learn[ed] of the violation of Plaintiff's Due Process rights allotted him by the United States Constitution 5th[,] 8th and 14th Amendment[s]" and the California Constitution, but "ignore[d] and fail[ed] to act to a safety problem of life endangerment." (<u>Id.</u> at 6.) He also alleges Kellerman signed a Rule Violation Report "in and of itself a violation" because it "ignore[d] the policy governing the Rules and Regulations of Excessive Use of Force as specif[ied] in the California Code of Regulations Title 15, section 3268" prohibiting " 'the use of more force than is objectively reasonable,' " and alleges he "should be held respons[i]ble and liable due to negligence of duty as supervisor [and] captain of Facility B." (ECF No. 1 at 5-6.)

Benn names G. J. Janda, "Chief Deputy Warden" of the prison, alleging he signed a Rules Violation Report as "Chief Disciplinary Officer" and signed Benn's inmate grievance appeal, denying it at the second level of review. (ECF No. 1 at 7.) He alleges Janda "ignor[ed] Plaintiff's objections to the actions of Defendants E. Duarte and E. Garcia, that purposefully inflicted harm of cruel and unusual punishment" and "ignore[d] Plaintiff's Due Process rights" under the Fifth, Eighth, and Fourteenth Amendments, for which he should "be held culpable due to negligence of duty to intervene . . . ." (<u>Id.</u>)

Benn names Larry Small, the "Warden and Chief Executive Officer" at Calipatria, "responsible for the custody, treatment, training and discipline of all inmates." (ECF No. 1 at 8.) Small presided over Benn's Administrative Segregation Unit Committee Hearing and "was made aware of the events . . . . involving Correctional Officers E. Duarte and E. Garcia purposefully inflicting harm of Cruel and Unusual Punishment when spraying Plaintiff with two (2) cans of O.C. spray while still in his cell, posing no imminent threat of harm or injury to either correctional officer[] . . . or to Plaintiff's cell-mate or himself." (<u>Id.</u>) Benn alleges Small should be held liable for his wrongful transfer to administrative segregation after he was found guilty of the rules violation, in purported violation of the Fifth, Eighth, and Fourteenth Amendments, "due to negligence of duty to intervene with the trust and authority of his position" in Duarte's and Garcia's alleged misconduct. (<u>Id.</u> at 8-9.)

Benn names R. Manuel, identified as the Department of Corrections Appeals Examiner who reviewed Benn's grievance file but "ignore[d] Plaintiff's objections and proofs presented" regarding the \\

unconstitutional "transgressions" of defendants Duarte and Garcia, whereas he should have "intervene[d] with the authority given him by the Department of Corrections." (ECF No. 1 at 9-10.)

Finally, Benn names Matthew Cate, Director of the Department of Corrections "legally responsible for the overall operation of the Department and each institution including Calipatria." (ECF No. 1 at 10.)  He alleges that he sought relief through the administrative appeal process "to address the matter of Excessive Use of Force by Correctional Officers E. Duarte and E. Garcia," but the Director found Benn's "allegations have been reviewed and evaluated by Administrative staff and an appeal inquiry has been completed at the SLR," then "determined that staff complied with the requirements of CDCR policy, as it relates to the appellant's allegations." (Id. at 11.) Benn contends those findings were erroneous and "negligent to justice" because the Director thereby "denied Plaintiff" his Fifth and Fourteenth Amendment rights, by "agreeing with the Administrative Staff," for which he should "be held liable due to negligence of duty to intervene." (Id. at 11-12.)

Benn invokes federal jurisdiction under 42 U.S.C. § 1983 by contending the officers' use of force "purposefully and recklessly inflicted harm of cruel and unusual punishment with callous indifference." (ECF No. 1 at 5.)  He characterizes Defendants' conduct as violations of his due process rights and his right to be free from cruel and unusual punishment under the federal and state constitutions.  (Id. at 18.) He alleges the "pattern" of conduct by all the administrative or supervisory defendants "aided and abet[ted] the assault and callous indifference demonstrated by Correctional Officers E. Duarte and E. Garcia" and they should be "held liable" on that theory.  (Id. at 12.)  He asks this Court to "grant the relief that was denied by the Department of Corrections." (Id. at 18.)

## II.    DISCUSSION

### A.    Legal Standards

#### 1.    Cognizable Prisoner Civil Rights Claims

The Civil Rights Act, 42 U.S.C. § 1983 ("Section 1983"), " 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.' "  Graham v. Connor, 490 U.S. 386, 393-94 (1989) (citation omitted).

> [Section 1983] creates a cause of action against a person who, acting under color of state law, deprives another of rights guaranteed under the Constitution.  Section 1983 does not create any substantive rights; rather

1    it is the vehicle whereby plaintiffs can challenge actions by governmental

2    officials.   To prove a case under section 1983, the plaintiff must demonstrate that (1) the action occurred "under color of state law" and (2) the action resulted in the deprivation of a constitutional right or

3    federal statutory right. [Citations.]

4    Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

5          "Liability under section 1983 arises only upon a showing of personal participation by the

6    defendant," acting under color of state law, that deprived the plaintiff of a federal right.  Taylor v. List,

7    880 F.2d 1040, 1045 (9th Cir. 1989).  A person has acted under color of state law when the individual

8    "exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is

9    clothed with the authority of state law.' "  West v. Atkins, 487 U.S. 42, 49-50 (1988), quoting United

10    States v. Classic, 313 U.S. 299, 326 (1941).  "[G]enerally, a public employee acts under color of state

11    law while engaged in his official capacity or while exercising his responsibilities pursuant to state law."

12    Id. at 50 (citation omitted).  The causation inquiry focuses on the duties and responsibilities of each

13    defendant whose acts or omissions are alleged to have caused a constitutional violation.  "A person

14    'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he

15    does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he

16    is legally required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy, 588

17    F.2d 740, 743 (9th Cir. 1978).

18          The Prison Litigation Reform Act of 1996 ("PLRA") requires procedural and substantive

19    exhaustion of administrative remedies before an inmate can bring a court action "with respect to prison

20    conditions under [42 U.S.C. § 1983], or any Federal law . . . ."  42 U.S.C. § 1997e(a); Porter v. Nussle,

21    534 U.S. 516, 532 (2002) (the requirement is mandatory, "applies to all inmate suits about prison life,

22    whether they involve general circumstances or particular episodes").  An inmate who has properly

23    availed himself of the administrative processes the state makes available has satisfied the exhaustion

24    requirement.[3]  Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); see also Woodford v. Ngo, 548

25

26        [3]  California accords its prison inmates the right to appeal administratively any departmental decision, action, condition, or policy they can demonstrate has an adverse effect their welfare, as well as any alleged misconduct by named correctional officers.  Cal. Code Regs. tit. 15, § 3084.1; see Woodford v. Ngo, 548 U.S.

27    81 (2006).  The California regulations establish four levels of administrative review:  (1) informal resolution; (2) formal written appeal on a CDC 602 inmate appeal form; (3) Second Level appeal to the institution's head or

28    designee; and (4) Third Level appeal to the Director of the California Department of Corrections.  See Cal. Code Regs., tit. 15, §§ 3084.1-3084.6.

U.S. 81, 88-91, 85 (2006) (prisoners must exhaust administrative remedies even where the relief sought (such as monetary damages) cannot be granted by the administrative process).  There is no dispute Benn exhausted available remedies through the Director's level before filing suit.  (*See* ECF No. 1 at 17.)

However, "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole remedy is a writ of habeas corpus."  Preiser v. Rodriguez, 411 U.S. 475, 500 (1973).  Although a habeas action and a Section 1983 action are not necessarily mutually exclusive, "when prison inmates seek only equitable relief in challenging aspects of [administrative  decisions] that, so long as they prevail, *could* potentially affect the duration of their confinement, such relief is available under the federal habeas statute[;] [w]hether such relief is also available under § 1983 depends on the application of *Heck*'s favorable termination rule . . . ."  Docken v. Chase, 393 F.3d 1024, 1031 (9th Cir. 2004) (emphasis in original) (explaining the distinction between those types of judicial intervention in the context of a challenge to parole denial), *citing* Heck v. Humphrey, 512 U.S. 477, 481 ("[H]abeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983") (*citing* Preiser, 411 U.S. at 475); *see also* Neal v. Shimoda, 131 F.3d 818, 824 (9th Cir. 1997).

When a Section 1983 action seeking damages alleges constitutional violations that would necessarily imply the invalidity of the conviction or sentence, the plaintiff must establish that the underlying sentence or conviction has been invalidated on appeal, by a habeas petition, or through some similar proceeding.  Heck, 512 U.S. at 483-87 (holding that a Section 1983 claim was not cognizable because the allegations were akin to a malicious prosecution claim, requiring as an element of the claim prior termination of the challenged proceeding in plaintiff's favor).  The Supreme Court later clarified that the Heck favorable termination rule applies regardless of the form of remedy sought, if the Section 1983 action necessarily implies the invalidity of an underlying conviction or a prison disciplinary judgment.  *See* Edwards v. Balisok, 520 U.S. 641, 646-48 (1997).

In Balisok, the Court held that a claim for monetary and declaratory relief challenging the validity of procedures used to deprive a prisoner of good-time credits is not cognizable under Section

1983 because the alleged defect – in that case, deceit and bias on the part of the decision maker – would result in an automatic reversal of the disciplinary sanction.  Balisok, 520 U.S. at 646-48; *see* McQuillon v. Schwarzenegger, 369 F.3d 1091, 1097-99 (9th Cir. 2004) (same); *see also* Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) (explaining that "a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration"); *but see* Ramirez v. Galaza, 334 F.3d 850, 858 (9th Cir. 2003) (holding that "the favorable termination rule does not apply to § 1983 suits challenging a disciplinary hearing or administrative sanction that does not affect the overall length of the prisoner's confinement").  As summarized in Ramirez:

> The Supreme Court first addressed the intersection between § 1983 and writs of habeas corpus in *Preiser v. Rodriguez*, holding that "when a state prisoner is challenging the very fact or duration of his physical confinement," and where "the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment," the prisoner's "sole federal remedy is a writ of habeas corpus." 411 U.S. at 500, 93 S.Ct. 1827. Conversely, *Preiser* concluded that "a § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody." *Id.* at 499, 93 S.Ct. 1827.

> The Court revisited *Preiser* in *Heck v. Humphrey*, involving a prisoner's § 1983 action alleging that state prosecutors and investigators had engaged in an unlawful investigation and knowingly destroyed exculpatory evidence.  512 U.S. at 478-79, 114 S.Ct. 2364.  The prisoner's complaint sought compensatory and punitive damages, but not injunctive relief, or release from custody.  *Id.* at 479, 114 S.Ct. 2364. The Supreme Court explained that a writ of habeas corpus "is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement . . .  even though such a claim may come within the literal terms of § 1983." *Id.* at 481, 114 S.Ct. 2364 (discussing *Preiser*, 411 U.S. at 488-90, 93 S.Ct. 1827).  The Court then announced a new "favorable termination rule" regarding the validity of § 1983 claims by prisoners:

>> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by action whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal ... or called into question by a federal court's issuance of a writ of habeas corpus. . . .

> *Id.* at 486-87, 93 S.Ct. 1827.  Absent such a showing, "[e]ven a prisoner

who has fully exhausted available state remedies has no cause of action under § 1983. . .." Id. at 489, 93 S.Ct. 1827.

In *Edwards v. Balisok*, the Supreme Court extended the favorable termination rule to prison disciplinary actions that implicated the prisoner's term of confinement.  In *Edwards*, a prisoner brought suit under § 1983 challenging the procedures used in a disciplinary hearing. Although the prisoner's conviction resulted in the loss of good-time credits, his suit sought only damages, and an injunction against future violations.  520 U.S. at 643-44, 117 S.Ct. 1584. The Court held that the prisoner could not circumvent the limitation on § 1983 suits imposed by *Heck*, because the alleged due process defects, if established, "necessarily imply the invalidity of the deprivation of his good-time credits." *Id.* at 646, 117 S.Ct. 1584. As that result would decrease the length of the prisoner's confinement, the Court concluded that the prisoner's claims were not cognizable under § 1983 until his disciplinary conviction was invalidated.

Ramirez, 334 F.3d at 855-56.

Nevertheless, none of those three cases "holds that prisoners challenging the conditions of their confinement are automatically barred from bringing suit under § 1983 without first obtaining a writ of habeas corpus." Ramirez, 334 F.3d at 856.  "Rather, the applicability of the favorable termination rule turns solely on whether a successful § 1983 action would necessarily render invalid a conviction, sentence, or administrative sanction that affected the length of the prisoner's confinement." Id.

### 2. Dismissal For Failure To State A Claim

"The Federal Rules require that averments be simple, concise and direct." McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (internal quotations omitted).  "All that is required [by Fed. R. Civ. P. ("Rule") 8] is that the complaint gives 'the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests.' " Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996) (citation omitted). Nevertheless, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, --, 129 S.Ct. 1937, 1950 (2009). "[B]are assertions" amounting merely to a "formulaic recitation of the elements" of a constitutional claim are, by their "conclusory nature . . . disentitle[d] to the presumption of truth" by a court deciding a motion to dismiss for failure to state a claim. Id. at 1951, *quoting* Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "In determining whether a complaint states a claim, all allegations of material fact are taken as true and construed in the light most favorable to the plaintiff." Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (*per curiam*); Cahill, 80 F.3d at 337-38 (same).  " 'The issue is not whether

9

11cv1214 AJB(JMA)

a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims," even if it appears "on the face of the pleadings that a recovery is very remote and unlikely. . . .' "   Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003), *quoting* Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

Federal courts hold  *pro se* litigants' pleadings to "less stringent standards than formal pleadings drafted by lawyers," and " '[a] document filed *pro se* is to be liberally construed . . . ." Erickson v. Pardus, 551 U.S. 89, 94 (2007), *quoting* Estelle v. Gamble, 429 U.S. 97, 106 (1976). However, the liberal pleading standard "applies only to a plaintiff's factual allegations." Neitzke v. Williams, 490 U.S. 319, 330 n.9 (1989).  " '[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled.' "  Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (citation omitted).  Furthermore, the advantage of liberal construction does not entitle pro se pleadings to "the benefit of every conceivable doubt," but only to the drawing of "reasonable or warranted factual inferences in plaintiff's favor." McKinney v. De Bord, 507 F.2d 501, 504 (9th Cir. 1974).  "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982); *see* Ove v. Gwinn, 264 F.3d 817, 821 (9th Cir. 2001) (same).

"[T]he factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  Starr v. Baca, 652 F.3d 1202, 1216 (2011).

> The standard at this stage of the litigation is not that plaintiff's explanation [of the claim] must be true or even probable.  The factual allegations of the complaint need only "plausibly suggest an entitlement to relief."  [*Iqbal*, 129 US.] at 1951.  As the Court wrote in *Twombly*, Rule 8(a) "*does not impose a probability requirement at the pleading stage*; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the allegations. *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955 (emphasis added).

Starr, 652 F.3d at 1216-17 (holding "the Supreme Court's decision in *Iqbal* did not alter the substantive requirements for supervisory liability claims in an unconstitutional conditions of confinement case under the Eighth and Fourteenth Amendments where deliberate indifference is alleged," reversing a district court's dismissal of that plaintiff's claim against a county sheriff).

**B.      Benn Fails To State An Official-Capacity Claim Against Any Defendant**

Benn sues all the defendants in both their official and individual capacities. "[T]he phrase 'acting in their official capacities' is best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury." Hafer v. Melo, 502 U.S. 21, 26 (1991). A defendant has acted under color of state law where he or she has "exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" West v. Atkins, 487 U.S. 42, 49 (1988) (citation omitted). Officials administering prisons act under color of state law for 42 U.S.C. § 1983 purposes. Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988); see Haygood v. Younger, 769 F.2d 1350, 1354 (9th Cir. 1985) (en banc) (holding a former state prisoner stated a Section 1983 claim for damages for denial of due process and right to be free from cruel and unusual punishment against prison officers who used an incorrect method to compute his release date, prolonging his incarceration by five years, as computed in successful state habeas corpus proceedings concluded before he filed his federal civil rights action). Federal courts reach the issue of a defendant's liability only if both elements essential to a Section 1983 action are present: "(1) the defendants acted under color of law, and (2) their conduct deprived [plaintiff] of a constitutional right." Haygood, 769 F.2d at 1354.

Nevertheless, claims under Section 1983 are limited by the Eleventh Amendment. Sovereign immunity "creates a jurisdictional bar to private damages actions against states in federal court." Leer, 844 F.2d at 631, citing Quern v. Jordan, 440 U.S. 332, 338-40 (1979). In actions against state agents and state instrumentalities, "when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." Regents of the University of California v. Doe, 519 U.S. 425, 429 (1997) (citation omitted) (punctuation omitted). When official-capacity suits filed against state officials are merely an alternative way of pleading an action against the entity of which the defendants are officers, they are not "persons" amenable to suit under Section 1983. See Hafer, 502 U.S. at 25); Jackson, 353 F.3d at 758.

In consideration of that obstacle, in order to maintain an official-capacity suit, the plaintiff must demonstrate that "the entity itself is a 'moving force' behind the deprivation. . . ." Kentucky v. Graham,

473 U.S. 159, 166 (1985); *see* <u>Hafer</u>, 502 U.S. at 25.  "[T]hus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." <u>Graham</u>, 473 U.S. at 166. Benn's allegations, liberally construed, identify no such fact and permit no such inference.  Thus, the Eleventh Amendment deprives this Court of jurisdiction over Benn's claims against any of the Defendants in their official capacities.  *See* <u>Quern</u>, 440 U.S. 338-40.  However, the Eleventh Amendment "only prohibits damages actions against the 'official's office' . . . ." <u>Stivers v. Pierce</u>, 71 F.3d 732, 749 (9th Cir. 1995).  Personal-capacity suits seeking to impose liability on a government official for actions the official takes under color of state law are cognizable in a Section 1983 action. <u>Graham</u>, 473 U.S. 159, 165 (1985).

### C.  <u>Benn Fails To State A Cognizable Section 1983 Claim Against Any Defendant Personally Other Than Duarte And Garcia</u>

#### 1.  <u>Due Process</u>

Only Duarte and Garcia personally participated in the OC spray incident Benn characterizes as use of excessive force.  He sues all the other named defendants based on their connection to the disciplinary hearing finding him guilty of a rules violation, the imposition of discipline, and his unsuccessful appeals through each stage of the institutional grievance process.  In addition to monetary, injunctive, and declaratory relief, he seeks restoration of custody credits and points taken away "due to Administrative finding of Guilt."  (ECF No. 1 at 19.)

> [A]ll Defendants mention[ed] in this suit is [sic] liable in part, because all defendants were in the position of authority and had the opportunity to intervene when that egregious actions of Correctional Officers E. Duarte and E. Garcia was brought to light after Plaintiff appeal the decision rendered by the Hearing Office of guilt without evidence to substantiate the charge.  Without bias and loyalty to the Department Plaintiff appeal to those with the authority in the interest of justice not to let the actions of the defendant stand as precedence, to no avail.  Plaintiff believes these actions were wrong and now under this 42 U.S.C. 1983 implore this court in the interest of justice to find in Plaintiff's favor. And grant the relief that was denied by the Department of Corrections.

(ECF No. 1, 17-18.)

Defendants argue Benn fails to state a valid claim for relief against any defendant except officers Duarte and Garcia.  (Mot. P&A, ECF No. 16-1 at 4 (citing, inter alia, <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1988) (a pleading fails to state a claim upon which relief can be granted

1   where the plaintiff does not have a cognizable legal theory, or fails to plead sufficient facts to support

2   a cognizable theory).)  A prisoner "is not wholly stripped of constitutional protections when he is

3   imprisoned for a crime." Wolff v. McDonnell, 418 U.S. 539, 555 (9th Cir. 1974); *see also*

4   Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454 (1985).  Nevertheless, "[p]rison

5   disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a

6   defendant in such proceedings does not apply." Wolff, 418 U.S. at 556. "It is well-established that '[t]he

7   requirements of procedural due process apply only to the deprivation of interests encompassed by the

8   Fourteenth Amendment's protection of liberty and property.' " Jackson, 353 F.3d at 755 (citing, inter

9   alia, Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972)); *see also* Neal, 131 F.3d at 827.

10          "The Due Process clause provides prisoners two separate sources of protection against

11   unconstitutional state disciplinary actions." Ramirez, 334 F.3d at 860-61.

12                  First, a prisoner may challenge a disciplinary action which deprives or
                    restrains a state-created liberty interest in some "unexpected manner."
13                  Sandin v. Conner, 515 U.S. 472, 483-84 (1995). Ramirez's claimed loss
                    of a liberty interest in the processing of his appeals does not satisfy this
14                  standard, because inmates lack a separate constitutional entitlement to a
                    specific prison grievance procedure. Mann v. Adams, 855 F.2d 639, 640
15                  (9th Cir.1988). Accordingly, Ramirez's claim lacks the necessary
                    constitutional foundation, and thus does not extend his confinement in an
16                  unexpected manner.

17                  Second, a prisoner may challenge a state action which does not
                    restrain a protected liberty interest, but which nonetheless imposes some
18                  "atypical and significant hardship on the inmate in relation to the
                    ordinary incidents of prison life." Sandin, 515 U.S. at 484; Keenan v.
19                  Hall, 83 F.3d 1083, 1088 (9th Cir.1996). If the hardship is sufficiently
                    significant, then the court must determine whether the procedures used
20                  to deprive that liberty satisfied Due Process. Sandin, 515 U.S. at 484;
                    Keenan, 83 F.3d at 1089.
21
22   Ramirez, 334 F.3d at 860-61 (parallel citations omitted).

23          Although Benn alleges defendants Duarte and Garcia "embellished" their rules violation report,

24   he does not allege his ability to present a defense to the rules violation charges was obstructed

     procedurally at any stage, and he lacks a constitutionally-protected liberty interest in the state-created
25
     grievance process.  Nor does Benn challenge the conditions of his confinement in administrative
26
     segregation as unconstitutional in any way. *See* Sandin, 515 U.S. at 484-87 (discussing the focus of a
27
     liberty interest inquiry applied to punishment of incarcerated prisoners as whether a change occurs in
28

                                                  13

confinement that imposes an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life"); *see* Resnick v. Hayes, 213 F.3d 443, 448 (9th Cir. 2000) (affirming a Rule 12(b)(6) dismissal for failure of the prisoner to allege facts from which a constitutionally protected liberty interest could be discerned associated with his confinement segregated housing). Rather, the primary consequence Benn complains of is the loss of custody credits he asks this Court to reinstate. (ECF No. 1 at 19, requesting "[r]estoration of credit and points taken, due to Administrative finding of Guilt [on evidence] that did not substantiate the charge. . . ."). Thus, in the guise of a federal civil rights action, Benn asks this Court to conduct its own investigation into the validity of the cell phone possession violation incident, make findings in his favor, and reverse the result of the inmate grievance review and appeals process.

Among the particular deprivations the United States Supreme Court has identified as not infringing a prisoner's protected liberty or property interests cognizable as a violation of the Due Process Clause is a loss of good-time credits. *See* Wolff, 418 U.S. at 557; *see also* Balisok, 520 U.S. at 646-48 (holding that the "evidentiary requirements of due process are satisfied if there is 'some evidence' in the record to support a prison disciplinary decision revoking good time credits," and that the prisoner's "claim for declaratory relief and money damages based on allegations of deceit and bias on the part of the decisionmaker that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983") (citations and internal punctuation omitted). The Balisok Court identified and distinguished two sorts of claims that tend to arise from disciplinary hearings, one cognizable under Section 1983, the other not.

> There is, however, this critical difference from *Heck*: Respondent, in his amended complaint, limited his request to damages for depriving him of good-time credits *without due process*, not for depriving him of good-time credits *undeservedly* as a substantive matter. That is to say, his claim posited that the procedures were wrong, but not necessarily that the result was. The distinction between these two sorts of claims is clearly established in our case law, as is the plaintiff's entitlement to recover at least nominal damages under § 1983 if he proves the former one without also proving the latter one.

Balisok, 520 U.S. at 645 (footnote omitted).

Defendants also argue Benn cannot obtain Section 1983 relief because "any due process claim is barred by the favorable termination doctrine." (ECF No. 16-1, 6:16-28, citing Balisok, 520 U.S. 641.)

14

1  "[T]he applicability of the favorable termination rule turns solely on whether a successful § 1983 action

2  would necessarily render invalid a conviction, sentence, or administrative sanction that affected the

3  length of the prisoner's confinement."  Ramirez, 334 F.3d at 856.  Even when the allegations of a

4  complaint plainly challenge the procedures used to reach a result, "the nature of the challenge to the

5  procedures could [still] be such as necessarily to imply the invalidity of the judgment," foreclosing relief

6  under Section 1983.  Balisok, 520 U.S. at 645, quoting the passage from Heck that distinguished Wolff,

7  418 U.S. 539:

8          "In light of the earlier language characterizing the claim as one of
           'damages for the deprivation of civil rights,' rather than damages for the
9          deprivation of good-time credits, we think this passage recognized a §
           1983 claim for using the wrong procedures, not for reaching the wrong
10         result (i.e., denying good-time credits). *Nor is there any indication in the
           opinion, or any reason to believe, that using the wrong procedures
11         necessarily vitiated the denial of good-time credits.*  Thus, the claim at
           issue in *Wolff* did not call into question the unlawfulness of the plaintiff's
12         continuing confinement."  Heck, 512 U.S. at 482-483 (emphasis added
           and deleted).

13
14 Balisok, 520 U.S. at 645-46 (emphasis in original) (parallel citation omitted) (concluding the prisoner's

15 Section 1983 claim was not cognizable because if successful, it would result in an automatic reversal

16 of the prison disciplinary sanction); *see also* McQuillon, 369 F.3d at 1097-99 (same, because the claims

17 relied on " 'deceit and bias' on the part of the [parole] decisionmakers, and impl[ied] the invalidity of

18 [the prisoner's] confinement"); Blueford v. Prunty, 108 F.3d 251, 255 (9th Cir. 1997) (affirming

19 dismissal without prejudice of due process claims arising from a prisoner's challenge to the prison's

20 disciplinary proceedings "because they could fairly be construed as a challenge for the loss of good time

21 credit").

22          Benn challenges the allegedly wrongful *result* of the disciplinary proceeding and consequent loss

23 of custody credits.  He applies directly to this Court for an undoing of the rules violation finding and

24 the punishment imposed, substantiating that the purportedly "undeserved" deprivation of his good time

25 credits has not been previously invalidated elsewhere.  Were the Court to decide Benn's due process

26 claims in his favor on the merits, the result would necessarily imply the invalidity of the deprivation of

27 his good-time credits.  "[T]he sole remedy in federal court for a prisoner seeking [the] restoration [of

28 lost] good-time credits is a writ of habeas corpus."  Balisok, 520 U.S. at 643-44, 646-48; *see* Heck, 512

U.S. at 486-87 ("We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by action whose unlawfulness would render a conviction or sentence invalid,* a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]") (emphasis added). Benn apparently cannot do so at this time. Accordingly, the case may not proceed under Section 1983 for due process violations associated with the administrative review and result.

### 2.   Cruel And Unusual Punishment

Benn's states: "The subject of this Law suit is 'excessive use of force' . . . ." (ECF No. 1 at 13.) "A prisoner can state a section 1983 claim against prison personnel under the eighth amendment by establishing that the prison personnel acted with 'deliberate indifference' in creating the condition that violates the eighth amendment." Leer, 844 F.2d at 633 (affirming summary judgment for prison officials in an Eighth Amendment challenge). The inquiry focuses "on whether the individual defendant was in a position to take steps to avert the . . . incident, but failed to do so intentionally or with deliberate indifference." Id. Here, the OC spraying incident involved no named defendant other than Duarte and Garcia, and Benn's "causation" allegations against all the other named defendants is limited to his contentions they should have prevented or corrected the *disciplinary result*, not that any of those "official[s] knew of a threat to the inmate's safety, yet failed to take action" to prevent the underlying harm. Id. Defendants contend "Benn fails to state a claim for relief against Captain Kellerman, Chief Deputy Warden Janda, Warden Small, or Director Cate" for the Eighth Amendment violation he alleges because, as to those defendants, he presents only allegations predicated on respondeat superior liability, negligent supervision, or their involvement in the inmate grievance system, a process not protected by any substantive constitutional right. (ECF No. 16-1, 5:18-6:11.

Plaintiffs retain the obligation to present a Complaint containing "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' " Iqbal, 129 S.CT. at 1949, *quoting* Twombly, 550 U.S. at 570. With respect to his deliberate indifference claim against all the named defendants other than Duarte and Garcia, Benn supports the cause of action by no more than "bald" or "conclusory" allegations not entitled to a presumption of truth. Iqbal, 129 S.CT. at 1951. He alleges no facts from which liability for Duarte or Garcia's allegedly unconstitutional use of force can be imputed to personal participation by any of the other defendants. His legal conclusions fail to link

11cv1214 AJB(JMA)

any of the named defendants personally, other than Duarte and Garcia, to the use of force conduct giving rise to this litigation.  Accordingly, the Motion to dismiss all the named defendants other than Duarte and Garcia is **GRANTED**.

### D.   Benn States Only A Cognizable Eighth Amendment Claim Against Duarte And Garcia

Benn asserts his federal claims for use of excessive force against Duarte and Garcia under the Fifth, Eighth, and Fourteenth Amendments.  Defendants do not dispute that the Complaint allegations state a Section 1983 claim against Duarte and Garcia as an Eighth Amendment violation adequately to survive Rule 12(b)(6) dismissal.  They move to dismiss all but that ground for relief, contending his excessive force claim "should not proceed under the Fifth or Fourteenth Amendments."  (ECF No. 16-1 at 7.)

As discussed above, the procedural guarantees of the Fifth and Fourteenth Amendments' Due Process Clauses apply only when a constitutionally protected liberty or property interest is at stake, unlike in this case.  *See* Jackson, 353 F.3d at 755 (9th Cir. 2003).  Moreover, Defendants argue: "Where an explicit textual source of constitutional protection against alleged government misconduct exists, it is that source – and not other amendments encompassing a broad right of due process – that is the appropriate source of the constitution's protection."  (ECF No. 16-1 at 7, *citing* Graham, 490 U.S. at 395 for the proposition that when a claim clearly falls within the parameters of a specific constitutional amendment (in that case, the Fourth Amendment prohibition against unreasonable searches and seizures), a reviewing court declines to consider a constitutional violation under the Fourteenth Amendment.)

To the extent Benn intends to allege that his constitutional right to be free from the use of excessive force derives not only from the Eighth Amendment but also from the Due Process Clause, and seeks relief for the same conduct under both those theories, the United States Supreme Court has determined in this context the Due Process Clause serves no purpose as an alternative basis for relief. "We think the Eighth Amendment, which is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions, serves as the primary source of substantive protection to convicted prisoners in cases such as this one, where the deliberate use of force is challenged as

1    excessive and unjustified." Whitley v. Albers, 475 U.S. 312, 327 (1986) (holding as to prison inmates,

2    "the Due Process Clause affords [them] no greater protection than does the Cruel and Unusual

3    Punishment Clause"); see Hudson v. McMillian, 503 U.S. 1, 6-7 (1992) ("[W]e hold that whenever

4    prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual

5    Punishments Clause, the core judicial inquiry is that set out in Whitley:  whether force was applied in

6    a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm").

7    Thus, Eighth Amendment jurisprudence provides the appropriate and exclusive standards for resolving

8    Benn's use of force claims.  Accordingly, his Due Process claims against Duarte and Garcia are

9    **DISMISSED**, and he may proceed against them only under the Eighth Amendment.

10                **E.    Leave To Amend**

11            If it appears the plaintiff could correct pleading deficiencies, "Federal Rule of Civil Procedure

12   15(a) provides that a trial court shall grant leave to amend freely 'when justice so requires.' " Watison,

13   2012 WL 432296 at **5, 7 (C.A. 9 (Cal.) Feb. 13, 2012) (affirming a district court's dismissal with

14   prejudice of a prisoner's Eighth Amendment claim against one correctional officer, but reversing

15   dismissal of First Amendment retaliation claims without leave to amend).  "Unless it is absolutely clear

16   that no amendment can cure the defect . . . ,  a pro se litigant is entitled to notice of the complaint's

17   deficiencies and an opportunity to amend prior to dismissal of the action." Lucas v. Dep't of Corr., 66

18   F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez, 203 F.3d at 1126, 1130-31 ("a district court

19   should grant leave to amend even if no request to amend the pleading was made, unless it determines

20   that the pleading could not possibly be cured by the allegation of other facts" (internal quotation and

21   citation omitted).

22            Benn's Complaint alleges considerable factual detail.  His Eighth Amendment claim clearly

23   arises out of a single cell search for contraband assigned to officers Duarte and Garcia.   He carefully

24   describes his own movements, those of his cell mate, and the officers' conduct from the moment they

25   approached the cell.  His "concrete allegations" are supported by specific facts adequate to state an

26   Eighth Amendment claim. Twombly, 550 U.S. at 562-63; Iqbal, 129 S.Ct. at 1951.   However, he

27   cannot also present the same claim as a due process violation under the Fifth and Fourteenth

28   Amendments. Whitley, 475 U.S. at 327.  As he cannot cure the pleading to state a cognizable claim

against Duarte and Garcia under the Fifth and Fourteenth Amendments, leave to amend the Complaint with respect to them for that purpose is **<u>DENIED</u>**, with prejudice.

Concerning the other named defendants, for the reasons discussed above, Benn cannot proceed with a Section 1983 civil rights complaint associated with the allegedly wrongful deprivation of custody credits unless he demonstrates he has satisfied certain mandatory prerequisites. *See* <u>Preiser</u>, 411 U.S. at <u>Balilsok</u>, 520 U.S. at 645; <u>Heck</u>, 512 U.S. at 486-87; <u>Ramirez</u>, 334 F.3d at 855-56. As he has not done so, and based on the nature of the relief he seeks cannot do so at this time, dismissal of those defendants is appropriate, and leave to amend the Complaint is **<u>DENIED</u>**, without prejudice.

## III.    CONCLUSION AND ORDER

For all the foregoing reasons, **IT IS HEREBY ORDERED**:

1.    Defendants' Motion To Dismiss Benn's official-capacity claims against all the named defendants is **<u>GRANTED</u>**.

2.    Defendants' Motion To Dismiss defendants Kellerman, Janda, Smalls, Manuel, and Cate for failure to state a cognizable civil rights claim against any of them is **<u>GRANTED</u>**, without prejudice.

3.    Defendants' Motion To Dismiss Benn's Fifth and Fourteenth Amendment due process claims against officers Duarte and Garcia is **<u>GRANTED</u>**, with prejudice. Accordingly, this action may proceed only as an Eighth Amendment challenge to the conduct of defendants Duarte and Garcia in their personal capacities.

4.    Defendants Duarte and Garcia shall file a pleading responsive to the Complaint in compliance with Rule 12(a)(4).

**IT IS SO ORDERED.**

DATED:  March 7, 2012

_____

Hon. Anthony J. Battaglia
U.S. District Judge